IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

JUN 2 8 2004

Michael N. Milby, Clerk of Court

| | |
|---|---|
| THOMAS LUTHER LESLY and SUSAN LESLY, § § § Plaintiffs, § § v. § UNION PACIFIC RAILROAD COMPANY, § § Defendant. § | CIVIL ACTION NO. H-03-0772 |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Union Pacific Railroad Company's Motion for Partial Summary Judgment (Docket Entry No. 16). For the reasons stated below, the motion will be denied.

### I. Factual and Procedural Background

Plaintiffs, Thomas and Susan Lesly, brought this action against Union Pacific Railroad Company ("Union Pacific") in the 190th Judicial District Court of Harris County, Texas, alleging that Union Pacific's negligence in failing to maintain certain railroad tracks and to erect sufficient warning devices at a railroad crossing made the crossing ultra-hazardous and caused injuries to the plaintiffs.[1] Union Pacific filed a Notice of Removal (Docket Entry No. 1) on March 4, 2003.

---

[1] See Notice of Removal, Docket Entry No. 1, Exhibit B-1, Plaintiffs' Original Petition.

On February 5, 2004, after the parties had engaged in some discovery, Union Pacific filed the pending motion for partial summary judgment (Docket Entry No. 16). The Leslys filed a response (Docket Entry No. 28).

The following relevant facts are undisputed. On September 24, 2001, Thomas Lesly was driving a cotton truck owned by Caprock Cotton Company on County Road 206 in Robertson County, Texas. At approximately 2:30 p.m. Lesly's truck was struck by a Union Pacific train at the railroad crossing labeled DOT 745224G.[2] Mr. Lesly was injured in the collision.[3] This particular grade crossing contained only passive warning devices: crossbucks with retro-reflective tape.[4]

## II. **Standard of Review**

Summary judgment is authorized when no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Facts are "material" if they "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).

---

[2]Motion for Partial Summary Judgment, Docket Entry No. 16 at p. 2.

[3]Id.

[4]Motion for Partial Summary Judgment, Docket Entry No. 16, Exhibit A at ¶ 12. "Crossbucks" are "the familiar black-and-white, X-shaped signs that read 'RAILROAD CROSSING.'" Norfolk Southern R.R. Co. v. Shanklin, 120 S. Ct. 1467, 1472 (2000). "Retroreflective tape" is intended to improve visibility of night trains at crossings. Motion for Partial Summary Judgment, Docket Entry No. 16, Exhibit A at ¶ 7.

Disputes are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 1511. The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S. Ct. at 2553-2554) (emphasis in original). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If, however, the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S. Ct. at 2553-54). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products Inc., 120 S. Ct. 2097, 2110 (2000).

Factual controversies are to be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

### III. Union Pacific's Motion for Partial Summary Judgment

#### A. Union Pacific's Arguments

Union Pacific argues that summary judgment is appropriate as to the issue of the adequacy of Union Pacific's warning devices because that issue is preempted by federal law. Union Pacific argues that the United States Supreme Court has held that the regulations establishing requirements for warning device installation, set forth in 23 C.F.R. § 646.214(b)(3) and (b)(4), preempt state law claims based on inadequate railroad crossing signage.[5] More specifically, Union Pacific contends that, when federal funds enable the installation of warning devices, this means that federal authorities have determined what devices are to be installed and where they are to be installed. Therefore, according to Union Pacific, federal regulations cover the subject matter of state tort law to the extent that it seeks to impose an independent duty on a railroad to identify and/or repair dangerous crossings.[6]

---

[5]Defendant Union Pacific Railroad Company's Motion for Partial Summary Judgment, Docket Entry No. 16 at p. 3 (citing CSX Transp., Inc. v. Easterwood, 113 S. Ct. 1732 (1993)).

[6]Id. at pp. 2-3.

To support its motion Union Pacific offers the Affidavit of Douglas G. Woods, Manager of Industry and Public Projects for Union Pacific in Harris County, who asserts that federal funds were used to upgrade all public railroad grade crossings in Texas, including the one at issue in this action.[7]

## B. The Leslys' Response in Opposition

The Leslys argue that Union Pacific's motion should be denied for three reasons: (1) it depends on Woods' affidavit, which should be excluded under Federal Rule of Evidence 602; (2) even if the court considers Woods' affidavit, that evidence fails to demonstrate that federal funds were spent on the crossing in question, a fact that Union Pacific has the burden of proving; and (3) the signs at the crossing in question do not include a "warning device" as defined by the Manual of Uniform Traffic Control Devices ("MUTCD").[8]

The Leslys contend that, under a 1977 state program that utilized federal funds, all existing crossbucks in Texas that met minimum standards and were properly positioned were not improved. Moreover, the Leslys argue that Union Pacific has no documentary evidence establishing which crossbucks used federal funds for improvements and which were left unimproved. The Leslys maintain that Woods' affidavit wrongly suggests that every public grade

---

[7]Id., Exhibit A at ¶ 4.

[8]Plaintiffs' Response to Union Pacific Railroad Company's Motion for Partial Summary Judgment, Docket Entry No. 28 at p. 1.

crossing in Texas was improved with federal funds, a position contradicted by other evidence.[9] Finally, citing the deposition testimony of Darin Kosmak, the current Railroad Sections Director of the Traffic Operations Division for the Texas Department of Transportation, the Leslys emphasize that the application of retroreflective tape, which Union Pacific claims was applied to the crossbucks at the crossing in question (with federal funds), is not a "warning device" as countenanced by the MUTCD.[10]

## C. The Court's Analysis

Even assuming the admissibility of Douglas Woods' affidavit, the court concludes that the Leslys have established that genuine issues of material fact exist as to whether federal funds were used to improve the particular railroad crossing where Thomas Lesly's truck was struck by Union Pacific's train and as to whether the alleged improvement (the addition of retroreflective tape) is a "warning device" under the MUTCD. Therefore, Union Pacific has failed to establish the prerequisites for preempting the Leslys' state law claim based on inadequate warning.

The Federal Railroad Safety Act of 1970 ("FRSA"), 49 U.S.C. §§ 20101, et seq., formerly 45 U.S.C. §§ 421, et seq., preempts some state-law negligence actions against railroads where Congress has acted to regulate a particular aspect of railroad safety. As

---

[9]Id. at p. 12 (citing Exhibit 10, Deposition of Darin Kosmak at pp. 254:19 - 255:24).

[10]Id. at pp. 11-12.

part of the FRSA, Congress enacted the Federal Railway-Highway Crossings Program, making federal funds available to the states to improve grade crossings. Norfolk Southern R.R. Co. v. Shanklin, 120 S. Ct. 1467, 1471 (2000). In exchange for federal funds, the states must "conduct and systematically maintain a survey of all highways to identify those railroad crossings which may require separation, relocation, or protective devices, and establish and implement a schedule of projects for this purpose." 23 U.S.C. § 130(d). Federal regulations promulgated under FRSA set forth further conditions on the states' use of federal aid to improve grade crossings. For instance, when undertaking projects involving warning devices states must employ devices that conform to standards set forth in the MUTCD.[11] CSX Transp., Inc. v. Easterwood, 113 S. Ct. 1732, 1738-39 (1993) (citing 23 C.F.R. §§ 646.214(b)(1), 655.603). State tort law is preempted when sections 646.214(b)(3) and (4),[12] which establish requirements as

---

[11]United States Department of Transportation, Federal Highway Administration, Manual on Uniform Traffic Control Devices for Streets and Highways (1988). The Manual has been incorporated into federal regulations promulgated by the Secretary. See 23 C.F.R. §§ 655.601-655.603.

[12]If a particular crossing possesses any of the conditions enumerated in section 646.214(b)(3), the state must install automatic gates and flashing lights; if all (b)(3) factors are absent, (b)(4) dictates that the decision as to what warning device is appropriate is subject to Federal Highway Administration ("FHWA") approval. Sections 646.214(b)(3) and (b)(4) read in full:

> (3)(i) Adequate warning devices under § 646.214(b)(2) or on any project where Federal-aid funds participate in the installation of the devices
> (continued...)

to installation of particular warning devices, apply. Id. at 1737-38. In Shanklin the Court held that where a crossing improvement project has been federally approved and warning signs installed using federal funds, state regulation is displaced and state tort claims based on inadequate warning signs are preempted even absent

---

[12] (...continued)
        are to include automatic gates with flashing light signals when one or more of the following conditions exist:

  (A)  Multiple main line railroad tracks.

  (B)  Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.

  (C)  High Speed train operation combined with limited sight distance at either single or multiple track crossings.

  (D)  A combination of high speeds and moderately high volumes of highway and railroad traffic.

  (E)  Either a high volume of vehicular traffic, high number of train movements, substantial numbers of schoolbuses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.

  (F)  A diagnostic team recommends them.

 (ii)  Individual cases where a diagnostic team justifies that gates are not appropriate, FHWA may find that the above requirements are not applicable.

(4)  For crossings where the requirements of § 646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of the FHWA.

strict compliance with the relevant federal regulations. Shanklin, 120 S. Ct. at 1476.

Thus, to benefit from the preemptive effect of 23 C.F.R. 646.214(b), Union Pacific must establish that (1) the FHWA approved a project to improve warning devices at a railroad crossing, (2) the state of Texas installed the warning devices in accordance with the approved project at the crossing where Lesly's car was struck, and (3) Texas used federal funds to install the warning devices. See Shanklin, 120 S. Ct. at 1476.

Woods' affidavit describes a program implemented in Texas between 1977 and 1981 "to upgrade passive warning devices at railroad grade crossings" using federal funds.[13] Woods asserts that the program was designed to ensure that all crossings contained two reflectorized metal crossbucks.[14] Woods also states that the Federal Highway Administration ("FHA") approved the program.[15] Finally, Woods states that in 1989 Texas obtained FHA approval and funding for a project to install retroreflective material on crossbucks at all crossings that did not have active warning devices.[16] However, the documents attached to Woods' affidavit show that the programs he identifies were designed to bring Texas's crossbucks up to the minimum safety standards established in the

---

[13]Motion for Partial Summary Judgment, Docket Entry No. 16, Exhibit A at ¶ 4.

[14]Id. at ¶ 5.

[15]Id.

[16]Id. at ¶¶ 7-10.

MUTCD, but not necessarily to improve all crossbucks. Thus, it is unclear whether federal funds were used to improve the passive warning sign at the crossing where Thomas Lesly was injured. Moreover, the Leslys have provided evidence that, even if Union Pacific could establish categorically that federal funds were used to apply retroreflective tape to the crossbucks at the crossing in question, such tape, in and of itself, is not a "warning device" as defined by the MUTCD.[17] Advance warning signs in conjunction with reflectorized crossbucks have been deemed "warning devices" under the MUTCD. See Shanklin, 120 S. Ct. at 1472. However, the evidence presented here does not clarify whether the process of merely adding retroreflective tape to crossbucks constitutes "installing" a "warning device" in accordance with the FHWA's mandates. The court therefore concludes that Union Pacific cannot rely on the doctrine of preemption in this action, and partial summary judgment is not warranted.

## IV. Conclusion and Order

For the reasons set forth above, Defendant Union Pacific Railroad Company's Motion for Partial Summary Judgment (Docket Entry No. 16) is **DENIED**.

**SIGNED** at Houston, Texas, on this the 25th day of June, 2004.

SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[17]Plaintiffs' Response to Union Pacific Railroad Company's Motion for Partial Summary Judgment, Docket Entry No. 28, Exhibit 10, Deposition of Darin Kosmak at pp. 98:24 - 100:9.

-10-